# Exhibit A

| | |
|---|---|
| STATE OF SOUTH CAROLINA ) | IN THE COURT OF COMMON PLEAS |
| ) | |
| COUNTY OF CHARLESTON ) | FOR THE NINTH JUDICIAL CIRCUIT |
| ) | |
| TAMANTHA JENKINS, ) | Civil Action No. |
| Plaintiff, ) | |
| ) | |
| v. ) | **COMPLAINT** |
| ) | **(Jury Trial Demanded)** |
| FLAGSHIP FACILITY ) | |
| SERVICES, INC., ) | |
| ) | |
| Defendants. ) | |

YOU ARE HEREBY SUMMONED and required to answer the Complaint in this action, a copy of which is herewith served upon you, and to serve a copy of your Answer to said Complaint on the subscribed, Nauheim Law Office, LLC, P.O. Box 31458, Charleston, South Carolina 29417, within thirty (30) days after the service hereof, exclusive of the date of such service; and if you fail to answer the Complaint within the time aforesaid, judgment by default will be rendered against you for the relief demanded in the Complaint.

    Respectfully submitted,

    s/David A. Nauheim
    DAVID A. NAUHEIM, Esq.
    S.C. Bar No. 102083
    NAUHEIM LAW OFFICE, LLC
    P.O. Box 21458
    Charleston, SC 29417
    Tel: 843 534-5084
    Fax: 843 350-3572
    *david@nauheimlaw.com*
    ATTORNEYS FOR THE PLAINTIFF

Charleston, South Carolina
DATE: April 13, 2022

**PLAINTIFF DEMANDS A TRIAL BY JURY.**

ELECTRONICALLY FILED - 2022 Apr 13 6:01 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1001717

ELECTRONICALLY FILED - 2022 Apr 13 6:01 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1001717

| | |
|---|---|
| STATE OF SOUTH CAROLINA ) | IN THE COURT OF COMMON PLEAS |
| COUNTY OF CHARLESTON ) | FOR THE NINTH JUDICIAL CIRCUIT. |
| TAMANTHA JENKINS, ) | Civil Action No. |
| Plaintiff, ) | |
| v. ) | **COMPLAINT** <br> **(Jury Trial Demanded)** |
| FLAGSHIP FACILITY ) <br> SERVICES, INC., ) | |
| Defendants. ) | |

The Plaintiff above named, complaining of the Defendant herein, would respectfully show unto the Court:

## JURISDICTION AND PARTIES

1. Defendant Flagship Facility Services, Inc. (Flagship) is a California Corporation that does business in South Carolina and operates an office out of North Charleston, SC.

2. Plaintiff Tamantha Jenkins is a resident of Charleston County, South Carolina.

3. All parties and subject matter herein are within the jurisdiction of this Honorable Court.

## BACKGROUND FACTS

4. Flagship is an employer that runs a janitorial and custodial service in Charleston, South Carolina with over fifty employees.

5. Flagship has more than fifteen employees and is subject to Title VII of the Civil Rights act of 1964 (Title VII).

6. Flagship is responsible for training managers, and supervisors, and Human Resources employees who make personnel decisions to act in a manner that complies with Flagship's non-discrimination policy and Title VII of the Civil Rights

1

ELECTRONICALLY FILED - 2022 Apr 13 6:01 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1001717

Act of 1964.

7. Flagship is responsible for having a policy for employees to report harassment and for training supervisors to properly respond to reports of harassment when they occur.

8. On or about March 3, 2020, Flagship hired Plaintiff Tamantha Jenkins as a janitor for third shift at the North Charleston Mercedes facility.

9. Flagship employs approximately over 100 people in the Charleston area, including approximately 30 working in the Mercedes North Charleston facility.

10. Ms. Jenkins is a member of a protected class; she is an African American woman.

11. Flagship assigned shift supervisor Frank Caldwell over the third shift. He was the direct supervisor of Ms. Jenkins and was assigned to train her.

12. On the first day of Ms. Jenkins' work at Flagship, Caldwell began sexually harassing her verbally, telling her sexually explicit things and asking for sexual favors.

13. Mr. Caldwell immediately received objection from Ms. Jenkins, who told Caldwell to stop his behavior and that she would report him.

14. Caldwell responded to Ms. Jenkins that Flagship management wouldn't do anything because "they know I'm flirtatious."

15. Two days later, James Hersman, facility manager who supervised Caldwell, received a complaint from Ms. Jenkins about the incident.

16. Hersman responded to Ms. Jenkins that Caldwell is "just flirtatious."

17. Hersman took no action in response to Ms. Jenkins' complaint.

18. Other Flagship coworkers later told Ms. Jenkins that Caldwell was known by

2

everyone at the facility to behave like this.

19. Hersman was personal friends with Caldwell and knew that Caldwell would harass female employees.

20. Shortly thereafter, Flagship put it's Charleston employees on furlough for COVID-19 precautions.

21. During the furlough, Caldwell called Ms. Jenkins and was sexually explicit over the phone, saying that he "wanted her chocolate breasts," and told Ms. Jenkins to send him nude pictures of herself.

22. Caldwell again received immediate objection from Ms. Jenkins, who told him to stop.

23. Caldwell then ended the call.

24. Hersman received a complaint from Ms. Jenkins by phone about Caldwell's sexual harassment.

25. Hersman responded to Ms. Jenkins that "what he [Caldwell] does on his own time is his business."

26. Caldwell continued to make these explicit phone calls to Ms. Jenkins during the furlough.

27. He called her eight to ten times over the span of the three-month furlough.

28. On or about July 1, 2020, Flagship brought its employees back from furlough.

29. Flagship again placed Caldwell on Ms. Jenkins' night shift.

30. On this first day back on shift, Caldwell followed Ms. Jenkins into a women's restroom that she was cleaning.

31. Caldwell then exposed his genitals to Ms. Jenkins and grabbed her buttocks and breast while talking explicitly to her, saying he said he wanted to put his "mouth on

ELECTRONICALLY FILED - 2022 Apr 13 6:01 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1001717

her pussy."

32. Ms. Jenkins had to physically fight Caldwell to keep him from raping her.

33. Caldwell told Ms. Jenkins that he would get her fired if she reported him when Ms. Jenkins told Caldwell that she would call the police.

34. Caldwell again told Ms. Jenkins that "Management won't do anything. They know I'm flirtatious."

35. Caldwell began threatening Ms. Jenkins with violence when she told him that she would report the incident to Hersman when he arrived at work.

36. Hours later, Hersman arrived at the workplace and was approached by Ms. Jenkins about Caldwell attacking her.

37. Hersman told Ms. Jenkins to write a statement about the event and HR would get in touch with her.

38. This was the first time that Hersman had taken any official action regarding Ms. Jenkins' complaints about Caldwell's behavior.

39. Hersman also told Ms. Jenkins not to call the police because it would jeopardize Flagship's contract with the Mercedes facility.

40. Ms. Jenkins did not call police because of Hersman's instruction.

41. A few days later, Caldwell returned to the workplace.

42. Facility security received word from Ms. Jenkins that Caldwell was at the facility and told them that she needed to see Hersman.

43. Hersman told Ms. Jenkins that the situation was in HR's hands and that he could not do anything to remove Caldwell from the facility.

44. When Ms. Jenkins said she would call the police, Hersman told her that she would

4

ELECTRONICALLY FILED - 2022 Apr 13 6:01 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1001717

lose her job if she did so.

45. Hersman successfully prevented Ms. Jenkins from calling the police.

46. Flagship HR then received a call from Ms. Jenkins about the incident. HR responded that they could not speak with Ms. Jenkins about Caldwell's work situation.

47. Hersman approached Ms. Jenkins after discovering she made an HR complaint and said to her, "So you like telling on people, huh."

48. Hersman began to assign Ms. Jenkins significantly heavier workloads for her shift.

49. Hersman was in charge of the work itineraries at the facility.

50. Hersman assigned Ms. Jenkins a workload that would usually be assigned to four employees.

51. Hersman assigned the quadrupled workload to Ms. Jenkins and told her if she did not get everything accomplished then she would be fired.

52. Hersman continued to overburden Ms. Jenkins' workload every work shift.

53. Ms. Jenkins also learned from her African American coworkers that they had also received larger itineraries from Hersman.

54. This continued for about a month, until one shift manager Daniel ____ gave Ms. Jenkins the nightly itinerary created by Hersman.

55. Ms. Jenkins objected to being singled out by Hersman and being given so much more work than her coworkers.

56. Ms. Jenkins said to Daniel that she would not continue to do these heavy workloads that they were assigning because of her HR complaint.

57. Daniel then told Ms. Jenkins that Hersman said she can either do the work or she

5

ELECTRONICALLY FILED - 2022 Apr 13 6:01 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1001717

is fired.

58. When Ms. Jenkins refused to do the increased workload, Daniel fired her along with two other African American co-workers.

59. Ms. Jenkins and her co-workers all called Flagship's corporate HR department to report this incident.

60. Three days later, Flagship HR asked Ms. Jenkins and the co-workers to return to work.

61. Ms. Jenkins accepted the offer and returned to work.

62. When Ms. Jenkins and the other employees returned to work, Hersman brought them into his office for a meeting.

63. In this meeting, Hersman told Ms. Jenkins and the co-workers that "because you all called HR on me," he would strictly enforce all policies against them.

64. For example, Hersman told them, "If you are even two minutes late, I will write you up."

65. Following this event, Hersman began to strictly enforce attendance policies against African American employees and not do so against non-African American employees.

66. Non-African American employees continued to show up late to work or be absent entirely and Hersman would not discipline them.

67. In late August, Flagship's corporate HR office in California received a call from Ms. Jenkins.

68. Ms. Jenkins told HR that she believed Hersman was targeting her because of her prior HR complaint.

6

69. The Flagship HR representative remarked to Ms. Jenkins that other African American employees had called in recently complaining about Hersman.

70. The HR rep then told Ms. Jenkins to return to work.

71. Flagship HR took no disciplinary action following this call from Ms. Jenkins, but did inform Hersman of the complaint.

72. After Ms. Jenkins made this call to HR, Hersman began more aggressively writing her up for disciplinary actions.

73. On September 23, 2020, a Flagship coworker began antagonizing Ms. Jenkins, following her around her work area and instigated an argument.

74. Shift Manager Lisa Kayte-Brown reported this to Hersman by phone, and Hersman instructed Kayte-Brown to fire Ms. Jenkins.

75. Flagship then terminated Ms. Jenkins.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

76. The Plaintiff filed timely charges of discrimination with the U.S. Equal Employment Opportunity Commission (EEOC) and has received a Notice of Suit Rights letter from the EEOC.

77. The Plaintiff has exhausted administrative remedies, as required, and this action within the applicable statute of limitations.

78. On April 23, 2020, the Plaintiff's filed her EEOC charge.

79. On January 14, 2022, the Plaintiff received his Notice of Right to Sue letter from the EEOC.

80. The Plaintiff timely filed this action with ninety days of receiving the Notice of Right

to Sue letter.

## FOR A FIRST CAUSE OF ACTION
## VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT
## GENDER DISCRIMINATION

81. The Plaintiff re-alleges all the foregoing paragraphs as if restated herein verbatim.

82. The Defendant is an employer subject to the requirements and prohibitions of Title VII of the Civil Rights Act of 1964.

83. The Plaintiff is a member of a protected class under the statute.

84. The Defendant took adverse action against the Plaintiff because of the Plaintiff's protected class, her gender.

85. As a result of the Defendant's knowing and willfully unlawful actions, the Plaintiff has suffered damages (including but not limited to physical and mental distress, loss of income and benefits, costs and attorney's fees and other actual and punitive damages).

## FOR A SECOND CAUSE OF ACTION
## VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT
## HOSTILE WORK ENVRONMENT

86. The Plaintiff re-alleges all foregoing paragraphs as if restated herein verbatim.

87. The Defendant is an employer subject to the requirements and prohibitions of Title VII of the Civil Rights Act of 1964.

88. The Plaintiff is a member of a protected class under the statute.

89. The Plaintiff was subjected to unwelcome harassment.

90. The harassment was based on the Plaintiff's protected class.

91. The harassment was sufficiently pervasive to alter a term, condition, or privilege of employment.

92. Factual basis exists to impute liability for the harassment to the Defendant employer.

93. As a result of the Defendant's knowing and willfully unlawful actions, the Plaintiff has suffered damages (including but not limited to physical and mental distress, loss of income and benefits, costs and attorney's fees and other actual and punitive damages).

**FOR A THIRD CAUSE OF ACTION**
**VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT**
**RACE DISCRIMINATION**

94. The Plaintiff re-alleges all the foregoing paragraphs as if restated herein verbatim.

95. The Defendant is an employer subject to the requirements and prohibitions of Title VII of the Civil Rights Act of 1964.

96. The Plaintiff is a member of a protected class under the statute.

97. The Defendant took adverse action against the Plaintiff because of the Plaintiff's protected class, her race.

98. As a result of the Defendant's knowing and willfully unlawful actions, the Plaintiff has suffered damages (including but not limited to physical and mental distress, loss of income and benefits, costs and attorney's fees and other actual and punitive damages).

**FOR A FOURTH CAUSE OF ACTION**
**VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT**
**RETALIATION**

99. The Plaintiff re-alleges all foregoing paragraphs as if restated herein verbatim.

100. The Plaintiff is a member of a protected class under the statute.

101. The Plaintiff engaged in a protected activity.

9

102. The Defendant took materially adverse action against the Plaintiff.

103. There was a causal link between the Defendant's adverse action and the Plaintiff's protected activity.

104. As a result of the Defendant's knowing and willfully unlawful actions, the Plaintiff has suffered damages (including but not limited to physical and mental distress, loss of income and benefits, costs and attorney's fees and other actual and punitive damages).

### FOR A FIFTH CAUSE OF ACTION
### VIOLATION OF 42 U.S.C. 1981
### RACE DISCRIMINATION

105. The Plaintiff re-alleges all foregoing paragraphs as if restated herein verbatim.

106. 42 U.S.C. §1981 guarantees that African American citizens be treated equally in contractual matters as White citizens.

107. An employment relationship is by nature contractual.

108. The Defendant employed the Plaintiff.

109. The Defendant had a contractual relationship with the Plaintiff.

110. The Plaintiff is African American.

111. The Defendant treated the Plaintiff less favorably with regards to the terms and conditions of employment then non-African American employees.

112. Such disparate treatment amounts to discrimination based on race.

113. The Defendant's discriminatory and disparate treatment of the Plaintiff was intentional.

114. As a result of the Defendant's knowing and willfully unlawful actions, the Plaintiff has suffered damages (including but not limited to physical and mental distress,

loss of income and benefits, costs and attorney's fees and other actual and punitive damages).

### FOR A SIXTH CAUSE OF ACTION
### VIOLATION OF 42 U.S.C. 1981
### HOSTILE WORK ENVIRONMENT

115. The Plaintiff re-alleges all foregoing paragraphs as if restated herein verbatim.

116. 42 U.S.C. §1981 guarantees that African American citizens be treated equally in contractual matters as White citizens.

117. An employment relationship is by nature contractual.

118. The Defendant employed the Plaintiff.

119. The Defendant had a contractual relationship with the Plaintiff.

120. The Plaintiff is African American.

121. The Plaintiff was subjected to unwelcome harassment.

122. The harassment was based on the Plaintiff's protected class.

123. The harassment was sufficiently pervasive to alter a term, condition, or privilege of employment.

124. Factual basis exists to impute liability for the harassment to the employer.

125. As a result of the Defendant's knowing and willfully unlawful actions, the Plaintiff has suffered damages (including but not limited to physical and mental distress, loss of income and benefits, costs and attorney's fees and other actual and punitive damages).

### FOR A SEVENTH CAUSE OF ACTION
### VIOLATION OF 42 U.S.C. 1981
### RETALIATION

126. The Plaintiff re-alleges all foregoing paragraphs as if restated herein verbatim.

127. 42 U.S.C. §1981 guarantees that African American citizens be treated equally in contractual matters as White citizens.

128. An employment relationship is by nature contractual.

129. The Defendant employed the Plaintiff.

130. The Defendant had a contractual relationship with the Plaintiff.

131. The Plaintiff is African American.

132. The Plaintiff engaged in a protected activity.

133. The Defendant took materially adverse action against the Plaintiff.

134. There was a causal link between the Defendant's adverse action and the Plaintiff's protected activity.

135. As a result of the Defendant's knowing and willfully unlawful actions, the Plaintiff has suffered damages (including but not limited to physical and mental distress, loss of income and benefits, costs and attorney's fees and other actual and punitive damages).

**WHEREFORE**, the Plaintiff prays for judgment against the Defendants for all injuries and damages, punitive damages, fees and costs and equitable remedies set forth in this complaint and/or allowed, provided for or permitted by the common law or statutory law in such an amount as shall be determined by the finder of fact under the evidence presented at trial, and for further relief as the Court may deem just and proper.

Respectfully submitted,

ELECTRONICALLY FILED - 2022 Apr 13 6:01 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1001717

ELECTRONICALLY FILED - 2022 Apr 13 6:01 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1001717

| | |
|---|---|
| /s/ David A. Nauheim<br>DAVID A. NAUHEIM<br>Federal Court ID No. 12551<br>NAUHEIM LAW OFFICE, LLC<br>P.O. Box 31458<br>Charleston, SC 29417<br>Tel: 843 534-5084<br>Fax: 843 350-3572<br>david@nauheimlaw.com | /s/ Joshua Mangan<br>JOSHUA MANGAN<br>Federal Court ID No. 13351<br>NAUHEIM LAW OFFICE, LLC<br>P.O. Box 31458<br>Charleston, SC 29417<br>Tel: 842 352-3519<br>Fax: 843 350-3572<br>josh@nauheimlaw.com |

ATTORNEYS FOR THE PLAINTIFF

April 13, 2022

13